FILED

2018 Sep-10 PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED

'04 APR 16 AM 9: 41

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Case No. CR-02-BE-124-E |
| v. | * | Birmingham, Alabama |
| TERRY LYNN FOREHAND, | * | September 3, 2002 |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE


FOR THE GOVERNMENT:

ADLOPH DEAN
Assistant United States Attorney
1801 4th Avenue North
Birmingham, Alabama   35203

FOR THE DEFENDANT:

J. SCOTT BOUDREAUX
604 38th Street South
Birmingham, Alabama   35222


Court Reporter:

Teresa Roberson, RPR, RMR
Federal Court Reporter
1729 North Fifth Avenue, Suite 325
Birmingham, Alabama   35203

```
                            *   *   *   *   *
1
2                          P R O C E E D I N G S
3                            *   *   *   *   *
4                             (Open court.)
5           THE COURT:  Good afternoon.  The matter to be taken up
6    at this time is the case of United States of America versus
7    Terry Forehand, 02-BE-0124-E.
8           Mr. Forehand, before I can accept the plea of guilty
9    from you, there are certain matters into which I must inquire
10   and that will require that you be placed under an oath.  I want
11   to point out that while you are under oath, I may ask you
12   questions about the offense with which you are charged or about
13   matters that relate to your plea of guilty or other things that
14   effect sentencing.
15          Any answers to those questions must be full, complete,
16   and totally true because a false answer or a false statement
17   could be used against you as a basis for prosecuting you for
18   perjury or false statement.  Do you understand?
19          THE DEFENDANT:  Yes, ma'am.
20          THE COURT:  I am going to ask the clerk to administer
21   an oath to you at this time.
22                      TERRY LYNN FOREHAND, SWORN
23          THE COURT:  Mr. Forehand, I have before me the guilty
24   plea advice of rights certification signed by you on August
25   18th of this year and filed today.  Did you understand the
```

1 information that was contained in that certification?

2          THE DEFENDANT: Yes, ma'am.

3          THE COURT: Have you, Mr. Forehand, within the past

4 seventy-two hours taken or received any drugs, intoxicants,

5 narcotics, or medications of any kind?

6          THE DEFENDANT: No, ma'am.

7          THE COURT: Do you have any mental impairment that may

8 affect your ability to understand and respond to my questions?

9          THE DEFENDANT: No, ma'am.

10          THE COURT: Mr. Forehand, if there is anything that is

11 said here today or if anything takes place here that you do not

12 understand, I want you to interrupt the proceedings and either

13 ask me to explain the matters to you or give you an opportunity

14 to talk privately with your attorney so that he can clear

15 things up for you. Will you do that for me?

16          THE DEFENDANT: Yes, ma'am.

17          THE COURT: It's not uncommon for a plea of guilty to

18 be offered in reliance upon a plea bargain or plea agreement

19 between the defendant, his attorney and the United States

20 Attorney's office. Recommended sentences and plea bargains and

21 plea agreements are permissible, but they are not binding on

22 the Court. Where they exist and where a defendant is entering

23 his plea of guilty relying upon a plea bargain or plea

24 agreement, the defendant, his attorney, and the United States

25 Attorney's office all have the obligation to disclose that fact

1  to the Court and to tell the Court the terms and conditions of

2  any such plea bargain or plea agreement.

3          I have reviewed the plea agreement that was entered in

4  this case on August 20th of this year.  You signed that

5  agreement, didn't you, Mr. Forehand?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  At this time I'm going to ask the

8  Assistant United States Attorney Mr. Dean to advise the Court

9  of that office's knowledge of any recommended sentence, plea

10 bargain or plea agreement upon which the defendant might be

11 relying here today.  Mr. Dean.

12         MR. DEAN:  Thank you, Your Honor.  It's the agreement

13 of the parties that the defendant will plead guilty to counts

14 one, three, four and five of the indictment in the

15 above-referenced, above-styled case.  And I note that I did

16 style the case incorrectly, it should be BE instead of B in the

17 plea agreement.

18         THE COURT:  That is all right.  That is not the only

19 time that has happened.

20         MR. DEAN:  The government agrees to dismiss with

21 prejudice at the time of sentencing count two in the indictment

22 in the above-styled cause.

23         Upon the defendant's entry of those pleas, the

24 government recommends the defendant be granted a three level

25 reduction in the offense level for acceptance of responsibility

1  and that he be sentenced at the low end of the sentencing
2  guideline range as determined by the Court, plus the one
3  mandatory minimum sentence to be imposed to count five of the
4  indictment. All parties recognize the ultimate decision as to
5  sentencing is within the discretion of the Court and failure to
6  comply with the obligations of the plea should make it null and
7  void. That is essentially what our agreement is, Your Honor.

8         And I guess also parenthetically, we have no objection
9  to running any sentence that he may receive on another case in
10 Montgomery concurrent to the sentence here, although we realize
11 that that is fully within the discretion of the Court.

12        THE COURT: Is that part of the plea agreement?

13        MR. DEAN: It is not in the written plea agreement, we
14 have talked about that with probation prior to this and if it
15 becomes an issue, it's our position we don't have a problem
16 with that.

17        THE COURT: All right.

18        MR. BOUDREAUX: If I may interrupt for a second. He
19 has another pending case that he has already pled in the Middle
20 District, which arose out of the same series of transactions,
21 geographically he happened to pick the wrong place so he
22 actually committed one of these offenses -- there are several
23 offenses in the Northern District, one in the Middle District,
24 occurred at the same time, kind of the same chain of events and
25 there was a -- Mr. Dean had tried to do a Rule 20, but that

1    couldn't be done.  And he has already pled.  He will be

2    sentenced October 15th.  And then hopefully we will ask the

3    Court to, if it had been Rule 20, it would have been one

4    sentence, we will ask the Court in this case to run the portion

5    that can be run concurrently, there is a 924(c) which must be

6    consecutive, but the underlying offense, basic offenses, could

7    be run concurrent with that case.

8         THE COURT:  That is certainly a matter we will take up

9    at sentencing.  And I trust that both counsel will remind me of

10   that at that time.

11        Mr. Boudreaux, you and Mr. Forehand have in front of

12   you a written plea agreement filed with the Court on August

13   18th 2002.  Does that written plea agreement set forth

14   everything of which you are aware that your client is relying

15   upon by way of a plea bargain or agreement?

16        MR. BOUDREAUX:  Yes, ma'am.

17        THE COURT:  As well as the addition that Mr. Dean

18   made?

19        MR. BOUDREAUX:  Yes, ma'am.

20        THE COURT:  Before he signed the plea agreement, did

21   you have sufficient opportunity to fully discuss the plea

22   agreement with your client?

23        MR. BOUDREAUX:  Yes, ma'am.  For the record, my client

24   has been, since he is in custody in the Middle District, has

25   been housed at the Montgomery City Jail.  Upon receipt of the

1  plea agreement and also the tentative guideline calculations
2  and the rights certification, I immediately forwarded to him a
3  copy so he could review it prior to my visit at the jail.  And
4  then at the jail, we were able to go over it and sign the
5  appropriate documents at that time.  In answer to your
6  question, yes, ma'am.

7          THE COURT:  Did your client have any questions of you
8  concerning the meaning of the agreement or its operation or
9  effect that you do not feel you were able to adequately answer
10 to his satisfaction?

11         MR. BOUDREAUX:  Mr. Forehand, in my opinion, is more
12 intelligent than the normal defendant and he asked some
13 intelligent questions which I feel I answered satisfactorily
14 and we were able to converse about the documents.  I feel he
15 has a full understanding of it.

16         THE COURT:  Mr. Forehand, does the written plea
17 agreement that you have there before you set forth everything
18 on which you are relying at this time by way of a plea bargain
19 or plea agreement with the government?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Before you signed the agreement, did you
22 have a sufficient opportunity to discuss it with your attorney,
23 Mr. Boudreaux?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  Did you have any questions regarding the

1    meaning of the agreement or how it might operate or its effect
2    that your attorney did not answer to your satisfaction?
3              THE DEFENDANT:  No, ma'am.
4              THE COURT:  Mr. Forehand, the plea agreement which you
5    have entered with the United States Attorney's office contains
6    language waiving some or all of your rights to appeal the
7    sentence that is yet to be imposed.
8              Under certain conditions, you can waive your right to
9    appeal and that waiver would be enforceable.  However, if you
10   believe that such a waiver is not enforceable, you do have the
11   right to appeal and to argue that theory to the appellate
12   court.  I just wanted to make sure you understood that, even
13   though the agreement contains that waiver.
14             Do you understand that the United States Attorney's
15   office is required to comply with any obligations imposed upon
16   it by the plea bargain, but that plea bargain is not binding on
17   the judge or the Court.  Do you understand that?
18             THE DEFENDANT:  Yes, ma'am.
19             THE COURT:  In other words, do you understand,
20   Mr. Forehand, that if I accept your plea of guilty, when I
21   impose a sentence, I could structure a sentence that is totally
22   consistent with the terms and understanding of that agreement
23   or recommendations by the United States Attorney's office, or I
24   could structure a sentence that could be viewed as
25   substantially more severe or substantially less severe than

1 that contemplated by the agreement and, yet, you would have no

2 right to withdraw the plea of guilty that you are in the

3 process of entering. Do you understand that?

4 THE DEFENDANT: Yes, ma'am.

5 THE COURT: Has anyone promised you anything,

6 Mr. Forehand, or threatened you in any way to encourage you to

7 enter this plea of guilty?

8 THE DEFENDANT: No, ma'am.

9 THE COURT: Do you also understand that if the Court

10 accepts your plea of guilty, all that remains is for a sentence

11 to be imposed?

12 THE DEFENDANT: Yes, ma'am.

13 THE COURT: Do you understand that the maximum

14 penalties for the charges against you include, for counts one

15 and four, a fine of not more than two hundred fifty thousand

16 dollars, each count, custody of not more than twenty-five

17 years, each count, supervised release time of five years, and

18 an assessment fee of one hundred dollars, each count,

19 restitution applies and the guidelines apply.

20 As to count three, a fine of not more than two hundred

21 and fifty thousand dollars, custody of not more than twenty

22 years, supervised release time of not more than three years,

23 and an assessment fee of one hundred dollars, restitution

24 applies, and the guidelines apply.

25 As to counts two and five, fine of not more than two

hundred fifty thousand dollars, each count, custody of not less than seven years as to count two, not less than twenty-five years as to count five, supervised release time of five years, and an assessment fee of one hundred dollars, each count, restitution applies, the guidelines apply, there could be no probation.

As to counts two and five, they may not be concurrent with any other sentence, and any second or substitute convictions could result in a custody of not less than twenty-five years consecutive.

Mr. Forehand, do you understand the maximum penalties I have just outlined?

THE DEFENDANT:  Yes, ma'am.

PROBATION OFFICER:  He is only pleading to count five.

MR. DEAN:  Count two is to be dismissed at sentencing.

THE COURT:  Everything except count two.

MR. DEAN:  One, three, four and five.

THE COURT:  Thank you.  Do you understand, Mr. Forehand, that in determining a sentence, the Court must consider applicable sentencing guidelines but may depart from those guidelines under certain circumstances consistent with the guidelines?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Have you had sufficient opportunity and

1    time to discuss the sentencing guidelines with your attorney?

2          THE DEFENDANT: Yes, ma'am.

3          THE COURT: Mr. Boudreaux, have you completely

4    discussed and advised Mr. Forehand regarding the sentencing

5    guidelines and their application to the offenses charged

6    against him?

7          MR. BOUDREAUX: Yes, ma'am.

8          THE COURT: Mr. Forehand, do you understand that you

9    have a right to insist upon a plea of not guilty, and if you

10   plead not guilty, the burden is upon the government to prove

11   your guilt to a jury beyond a reasonable doubt, that would be

12   done at a trial where you would have the assistance of counsel

13   and the right not to be compelled to incriminate yourself or

14   give evidence against yourself.

15          But with the entry of a plea of guilty, there will be

16   no jury trial, there will be no more presumption of innocence,

17   and there will be no right to confront and cross-examine the

18   witnesses and the evidence against you which would be necessary

19   if there were a trial. Do you understand that?

20          THE DEFENDANT: Yes, ma'am.

21          THE COURT: Is there anything, Mr. Forehand, that

22   prevents you from understanding anything that I am saying to

23   you at this time?

24          THE DEFENDANT: No, ma'am.

25          THE COURT: Is there anything that prevents you from

1  understanding anything your attorney says to you when he

2  discusses this matter with you?

3          THE DEFENDANT:  No, ma'am.

4          THE COURT:  Is there anything that prevents you from

5  understanding the nature of the charges against you or that

6  prevents you from understanding the nature and purpose of these

7  proceedings here today?

8          THE DEFENDANT:  No, ma'am.

9          THE COURT:  Is there anything that in any way prevents

10 you from understanding any of that?

11         THE DEFENDANT:  No, ma'am.

12         THE COURT:  Mr. Forehand, I want to go over with you

13 the charges against you and to outline those for you.

14         In count one of the indictment of this case in essence

15 charges that on or about the 13th day of December, 2001, in

16 Clay County, within the Northern District of Alabama, the

17 defendant, Terry Lynn Forehand, did knowingly, intentionally,

18 and unlawfully by force, violence and intimidation take from

19 the person and presence of another money, that is,

20 approximately eight thousand seventy-five dollars belonging to

21 and in the care and custody and control and possession of the

22 First Citizen's Bank, the deposits of which were then insured

23 by the Federal Deposit Insurance Corporation.

24         The indictment further charges that in committing such

25 offense, the defendant did assault and put in jeopardy the life

1  of another person by the use of a dangerous weapon, that is a
2  firearm, in violation of Title 18, United States Code, Section
3  2113(a) and (d).

4       Mr. Forehand, I know that you are not pleading guilty
5  at this time as to count two of the indictment, but I want to
6  outline those charges for you as well.

7       Count two of the indictment charges that on or about
8  the 13th day of December, 2001, in Clay County, within the
9  Northern District of Alabama, the defendant, Terry Lynn
10 Forehand, did knowingly brandish a firearm, that is, a brown
11 and black colored semi-automatic handgun during and in relation
12 to a federal crime of violence, specifically armed bank robbery
13 as charged in count one of the indictment, in violation of
14 Title 18, United States Code, Section 924(c)(1)(A).

15      Mr. Forehand, count three of the indictment in this
16 case in essence charges that on or about the second day of
17 January, 2002, in Calhoun County, within the Northern District
18 of Alabama, the defendant, Terry Lynn Forehand, did knowingly,
19 intentionally and unlawfully by force, violence and
20 intimidation take from the person and presence of another,
21 money, that is, approximately two thousand nine hundred sixty
22 dollars in United States currency, belonging to and in the
23 care, custody and control, management and possession of
24 SouthTrust Bank, the deposits of which were then insured by the
25 Federal Deposit Insurance Corporation in violation of Title 18,

1    United States Code, Section 2113(a).

2          Mr. Forehand, count four of the indictment in this

3    case in essence charges that on or about the 14th day of

4    January, 2002, in Etowah County, within the Northern District

5    of Alabama, the defendant, Terry Lynn Forehand, did knowingly,

6    intentionally and unlawfully by force, violence and

7    intimidation take from the person and presence of another

8    money, approximately twelve thousand five hundred forty-five

9    dollars in United States currency, belonging to and in the

10    care, custody, control, management, and possession of the

11    Regions Bank, Glencoe, Alabama, the deposits of which were then

12    insured by the Federal Deposit Insurance Corporation.

13          The indictment further charges that in committing such

14    offense, the defendant did assault and put in jeopardy the life

15    of another person by the use of a dangerous weapon,

16    specifically a firearm, in violation of Title 18, United States

17    Code, Sections 2113(a) and (d).

18          Count five, Mr. Forehand, charges that on or about the

19    14th day of January, 2002, in Etowah County, within the

20    Northern District of Alabama, the defendant, Terry Lynn

21    Forehand, did knowingly brandish a firearm, that is, a silver

22    colored revolver handgun during and in relation to a federal

23    crime of violence, specifically armed bank robbery, as charged

24    in count four of the indictment in violation of Title 18,

25    United States Code, Section 924(c)(1)(a)(ii).

1       Mr. Forehand, before there could be a conviction of

2   you under counts one, three, and four as charged, were those

3   charges to go to trial, the government would have the burden of

4   proving beyond a reasonable doubt the following requirements:

5       First, that the defendant knowingly took from the

6   person or the presence of the person described in the

7   indictment money or property then in possession of a federally

8   insured bank as charged;

9       Second, that the defendant did so by means of force,

10  or violence or by means of intimidation.

11      In addition, for a conviction under counts one and

12  four, the government must also prove that the defendant put in

13  jeopardy the life of some person by the use of a dangerous

14  weapon while engaged in taking the money or property as

15  charged.

16      Before there could be a conviction under counts two

17  and five as charged, were those charges to go to trial, the

18  government would have the burden of proving beyond a reasonable

19  doubt the following:

20      First, that the defendant committed the crime of

21  violence charged in counts one, three and four of the

22  indictment, excuse me, one and four of the indictment as to

23  counts two and five, correct?

24      MR. DEAN:  That's correct, Your Honor.

25      THE COURT:  Second, that during and in relation to the

1  commission of that offense, the defendant used or carried a

2  firearm as charged; and third that the defendant used or

3  carried the firearm knowingly.

4          Mr. Forehand, do you understand the charges against

5  you?

6          THE DEFENDANT: Yes.

7          THE COURT: Have you had sufficient time to discuss

8  those charges with your attorney, Mr. Boudreaux?

9          THE DEFENDANT: Yes, ma'am.

10          THE COURT: Are you satisfied with your attorney,

11  Mr. Boudreaux, and the work that he has done for you?

12          THE DEFENDANT: Yes, ma'am.

13          THE COURT: Mr. Boudreaux, are you satisfied that

14  Mr. Forehand understands the charges against him and the

15  consequences of his pleading guilty to those charges?

16          MR. BOUDREAUX: I am, Your Honor.

17          THE COURT: Are you also satisfied that he is

18  knowingly and voluntarily entering his plea of guilty?

19          MR. BOUDREAUX: Yes, ma'am.

20          THE COURT: Have you had sufficient opportunity,

21  Mr. Boudreaux, to investigate the charges against Mr. Forehand,

22  to consider any possible defenses he may have and generally to

23  give him your advice and counsel?

24          MR. BOUDREAUX: Yes, ma'am.

25          THE COURT: Mr. Forehand, I want you to listen

1   carefully to what the Assistant United States Attorney is about
2   to say because I am going to ask him to outline for you and for
3   me some of the evidence that he would offer to a jury were this
4   case to go to trial.

5          I want you to listen carefully because if he says
6   anything that you do not think is correct or that you do not
7   think he can prove, I want you to let me know.  You may do that
8   by raising your hand or by telling your lawyer and asking him
9   to explain to me what you do not think is correct or accurate
10  in the statement of the Assistant United States Attorney.  Will
11  you do that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Mr. Dean, what would the government expect
14  to prove were this case to proceed to trial?

15         MR. DEAN:  Thank you, Your Honor.  With respect to the
16  evidence with respect to counts one, three, four and five,
17  which defendant is offering his plea here today, with respect
18  to count one, we expect the evidence to show on or about
19  December 13, 2001, the defendant entered the First Citizens
20  Bank located at 83183 Highway 9, Ashland, Alabama, which is
21  Clay County, which is in the Northern District of Alabama, and
22  whose deposits are federally insured by the FDIC, and robbed
23  that bank by force, violence and intimidation with a firearm.
24  The defendant approached the lone victim teller and stated,
25  "this is a robbery, give me your money," and "hurry up, hurry

1    up."

2            The defendant was wearing a hooded coat with the hood

3    pulled up on top of a coat, pulled up and the top of the coat

4    zipper initially covering his mouth.  The defendant displayed a

5    brown and black pistol to the victim teller.  He received

6    approximately eight thousand seventy-five dollars from the

7    victim teller.

8            I expect the evidence to show that on or about January

9    25, 2002, this defendant, after being given his miranda rights,

10   gave a full confession to not only this robbery but the other

11   two robberies that we will outline in counts three and four to

12   agents of the FBI.

13           We expect the evidence to show that the defendant's

14   fifteen-year-old son Mark Forehand also was interviewed by

15   agents of the FBI and related that his father had confessed to

16   him about robbing several banks in the Eastern Division of the

17   Northern District of Alabama.  A State of Alabama search

18   warrant was executed at the defendant's residence on or about

19   the same date, January 25, 2002, wherein several items of

20   evidentiary value were taken, including shoes and clothing

21   consistent with the type used in the bank robberies outlined in

22   counts one, three and four.

23           We expect the evidence with respect to count three to

24   be that on or about January 2, 2002, the defendant entered the

25   SouthTrust Bank, who's insured by the FDIC, in Calhoun County,

1   in Jacksonville, Alabama, which is within the Northern District
2   of Alabama, and told the victim teller, "put all the money up
3   there."  The defendant had a brown and black BB pistol tucked
4   into his pants pocket.  This weapon was not displayed to the
5   teller.  The defendant obtained approximately two thousand nine
6   hundred and sixty dollars from this robbery and again this is
7   one of the robberies that the defendant previously gave a full
8   confession to the agents of the FBI on or about January 25,
9   2002.

10          Count four, we expect the evidence to show on or about
11  January 14, 2002, the defendant robbed the Regions Bank, who
12  again is an FDIC insured, located in Glencoe, Alabama, which is
13  in Etowah County, Northern District of Alabama, and had in its
14  possession a silver handgun.  The defendant verbally instructed
15  the victim teller "put the money up there and hurry up."  The
16  defendant was driving his mother's white Chevrolet Cavalier
17  which was parked at a car wash close to the bank.  The
18  defendant admitted to agents during that January 25 proffer
19  that he had a heavy drug use and that contributed to his
20  criminal activity.  The defendant obtained approximately twelve
21  thousand four hundred and fifty-four dollars from this robbery
22  on or about January 14th 2000.

23          That is in essence what we expect the evidence to
24  show, Your Honor.

25          THE COURT:  Okay.

1        MR. DEAN:  Of course, count five relates to having the
2   handgun.

3        THE COURT:  You have heard Mr. Dean outline briefly
4   certain of the facts that the government would expect to prove
5   at trial.

6        Are these facts substantially correct?

7        THE DEFENDANT:  Yes, ma'am.

8        THE COURT:  Mr. Dean made reference to a statement
9   made by you while in custody and he said that you had
10  previously had been given your miranda rights before making
11  that statement.  Is that correct?

12       THE DEFENDANT:  Yes, ma'am.

13       THE COURT:  You had been advised of your right to
14  remain silent and your right to have an attorney present before
15  you made the statement?

16       THE DEFENDANT:  Yes, ma'am.

17       THE COURT:  Mr. Forehand, how do you plead to the
18  charges against you?

19       THE DEFENDANT:  Guilty.

20       THE COURT:  Did you do the things that Mr. Dean says
21  you did?

22       THE DEFENDANT:  Yes, ma'am.

23       THE COURT:  Mr. Forehand, do you understand that you
24  are not required to enter a plea of guilty and you are free at
25  this time to withdraw your plea of guilty, but this will be the

1  last time that you would have the opportunity or be free to

2  withdraw your guilty plea and reinstate your plea of not

3  guilty.  Do you understand that?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Have you heard anything here today that

6  causes you to want to reconsider your decision to enter a plea

7  of guilty?

8          THE DEFENDANT:  No, ma'am.

9          THE COURT:  So do you still desire to enter a plea of

10 guilty to the charges against you?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Mr. Forehand, how do you plead to count

13 one of the indictment as charged?

14         THE DEFENDANT:  Guilty.

15         THE COURT:  The Court finds the defendant's plea of

16 guilty is freely, voluntarily, knowingly, and understandingly

17 offered by him and that the requisite factual basis for the

18 plea does in fact exist.  The plea of guilty as to count one is

19 accepted by the Court.

20         I understand that I will hold your plea as to count

21 two until sentencing when it may possibly be dismissed; is that

22 correct?

23         MR. DEAN:  Right.  We can dismiss it now if the Court

24 would like.

25         THE COURT:  That would be great.

1        MR. DEAN:   The government would dismiss count two with
2   prejudice at this time.

3        THE COURT:   The Court accepts the dismissal of count
4   two with prejudice.

5        How do you plead as to count three of the indictment
6   as charged against you?

7        THE DEFENDANT:   Guilty.

8        THE COURT:   The Court finds that the defendant's plea
9   of guilty as to count three is freely, voluntarily, knowingly,
10  and understandingly offered by him and that the requisite
11  factual basis for the plea does in fact exist.   The plea of
12  guilty as to count three is accepted by the Court.

13       Mr. Forehand, how do you plead as to count four of the
14  indictment?

15       THE DEFENDANT:   Guilty.

16       THE COURT:   The Court finds that the defendant's plea
17  of guilty as to count four is freely, voluntarily, knowingly
18  and understandingly offered by him and that the requisite
19  factual basis for the plea exists.   The plea of guilty as to
20  count four is accepted by the Court.

21       Mr. Forehand, how do you plead as to count five of the
22  indictment?

23       THE DEFENDANT:   Guilty.

24       THE COURT:   The Court finds that defendant's plea of
25  guilty is freely, voluntarily, knowingly, and understandingly

1 offered by him and that the requisite factual basis for the

2 plea does exist. And the plea of guilty as to count five is

3 accepted by the Court.

4 The probation office will need three or four weeks to

5 prepare a presentence investigation. Yes, sir.

6 THE DEFENDANT: Can I say something, Your Honor?

7 THE COURT: You sure may.

8 THE DEFENDANT: I would just like you to know that I

9 never had no intention of hurting nobody, the gun wasn't even

10 loaded. I mean, I just wanted the money for my drug habit. If

11 they told me "no", I would have left the bank. I had no

12 intention of hurting nobody.

13 THE COURT: You will have an opportunity to tell me

14 again at the sentencing and it would be important for

15 consideration at that time.

16 I will enter an order setting sentencing in this case

17 for Monday, November 25th 2002 at 1:30 in this courtroom. I

18 want to call to your attention the fact that my written order

19 will require that any objections to the presentence report be

20 filed in writing with the clerk of the court and with a copy

21 provided to probation office within fourteen days from the date

22 that you receive your --

23 MR. BOUDREAUX: Your Honor, my client has indicated to

24 me he would like to keep this on sort of the fast track. He is

25 going to be sentenced in the Middle District October 15th,

1  hopefully the probation office here will confer with the

2  probation office down there and it might aid them in processing

3  the PSI up here.  And so perhaps maybe we could aim a little

4  sooner than November.

5       THE COURT:  I tell you what let's do, we will put the

6  burden on the probation office to let me know when they can set

7  it or when they can have the presentence report done and things

8  of that nature.  I'm going to keep it at this date, but you can

9  move to move up that hearing if everything is completed before,

10 you know, sufficient time to do so.

11      MR. BOUDREAUX:  Yes, ma'am.

12      THE COURT:  But I think it's better to go on and have

13 a firm date and then we can move that around, if we need to.

14      Is there anything else we need to take up?

15      MR. DEAN:  Nothing else from the government, Your

16 Honor.

17      MR. BOUDREAUX:  No, ma'am.

18                       (Adjourned)

19

20

21

22

23

24

25

C E R T I F I C A T E

    I hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-referenced matter.




_____                    _____
Teresa Roberson, RPR, RMR                              DATE